UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KAREN MISKO<br><br>          *Plaintiff,*<br><br>v.<br><br>JANE BACKES d/b/a BACKES<br>QUARTER HORSES<br><br>          *Defendant.* | Civil Action No. 3:16-cv-03080-M<br>Jury Demanded |

BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MOTION
FOR MORE DEFINITIVE STATEMENT

COMES NOW Karen Misko ("Misko" or "Plaintiff") and files her Brief in

Support of Response in Opposition to Defendant Jane Backes d/b/a Backes Quarter

Horses' ("Backes" or "Defendant") Motion to Dismiss Pursuant to Fed. Civ. P. 12

(b)(6) and Motion for More Definitive Statement as follows:

## I.  PRELIMINARY STATEMENT

This is a lawsuit arising from allegations of Defendant's false advertising

regarding the qualities and characteristics of her quarter horses, which ended in January

2013.  *See generally* Plaintiff's Original Complaint ("Complaint") [Doc. 1].  Plaintiff's

claim is based on Section 43(a) of the Lanham Act's unfair competition provisions

("Lanham Act Claim").  *See generally* Doc. 1.

In her Motion to Dismiss and Brief in Support (collectively, "Motion to Dismiss"

[Docs. 8-9]), Defendant argues that Plaintiff's Lanham Act Claim should be dismissed on

the basis of *res judicata* based on prior state court litigation between the parties.  *See*

*generally* <u>Doc. 9</u> at 11-14.  As discussed below, Defendant's argument is completely frivolous because—although it is true that Plaintiff attempted to bring the Lanham Act Claim in state court—the Lanham Act Claim was specifically dismissed *without prejudice* to refiling because it was filed after the pleadings deadline in that case.  *See* Appendix to Defendant's Brief in Support [Doc. 10] at Ex. H (final judgment noting that Lanham Act Claim was not decided on the merits and was dismissed without prejudice).

The only claim that was adjudicated on the merits in the prior litigation was a claim alleging that Defendant co-conspired to defame Plaintiff by accusing her of abusing her daughter in February of 2013.  *Compare, e.g.,* Ex. C to <u>Doc. 10</u> at (detailing allegations of Plaintiff's sole claim against Defendant in the state court litigation) *with* Ex. H to (discussing dismissal of that claim by court of appeals).  That claim obviously has nothing to do with the merits of the Lanham Act Claim, either legally or factually. As such, there can be no application of the doctrine of *res judicata* in this case.

In addition, Defendant's Motion to Dismiss argues that Plaintiff has failed to adequately plead necessary elements of her Lanham Act Claim.  For the reasons discussed below, these arguments are without merit and the Motion to Dismiss should be denied.  In the alternative, Plaintiff should be given leave to replead any deficiencies in her Complaint.  Finally, Defendant seeks, in the alternative, a more definitive statement under Fed. R. Civ. P. 12(e), which should also be denied.

## II.  TABLE OF CONTENTS

**I.     Preliminary Statement**…………………………………………………1

**II.    Table of Contents**………………………………………………………2

**III.   Table of Authorities**………………………………………………......3

IV.    Statement of Facts...................................................................5

    A.  Plaintiff   Seeks   To   Investigate   Defamation   Claims   Against Defendant...................................................................5

    B.  Backes Thwarts The Pre-Suit Discovery By Filing A Groundless Lawsuit...................................................................5

    C.  The Appellate Ruling On Misko's Counterclaim..........................6

    D.  Subsequent Proceedings In The Trial Court.............................8

V.    Argument and Authorities..........................................................9

    A.  Legal Standard For 12(b)(6) Motion.......................................9

    B.  *Res Judicata* Does Not Apply..............................................10

    C.  Plaintiff Has Adequately Pleaded Her Lanham Act Claim............14

        1.  Misko's Detailed Complaint............................................14

        2.  Backes' 12(b)(6) Arguments Are Without Merit....................16

            (a)  Backes' *Lexmark* argument is misplaced....................16

            (b)  Misko sufficiently pleaded commercial advertising............17

            (c)  Misko sufficiently pleaded causation............................18

            (d)  Misko   sufficiently   pleaded   the   parties   were   direct competitors...................................................................19

    D.  In The Alternative, Misko Should Be Given Leave To Replead.......19

    E.  Backes' Motion For More Definitive Statement Should Be Denied...19

VI.    Conclusion...................................................................20

### III.  TABLE OF AUTHORITIES

**Cases**

*Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093 (5th Cir. 1995)...........................10-11

*Backes v. Misko,* 486 S.W.3d 7 (Tex. App.—Dallas 2015)...........................6-7, 18

*Barr v. Resolution Trust Corp.,* 837 S.W.2d 627 (Tex. 1992)...........................11,13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................10, 17

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)....................11

*C.C. Port, Ltd. v. Davis–Penn Mortgage Co.*, 61 F.3d 288 (5th Cir. 1995)...............10

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995)..............................10

*Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430 (Tex. 2007)....................11

*Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011)..................................................8

*IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368 (5th Cir. 2002).................16

*J.M. Muniz, Inc. v. Mercantile Texas Credit Corp.*, 833 F.2d 541 (5th Cir. 1987).........11

*Lexmark International, Inc. v. Static Control Components, Inc.*,

      134 S.Ct. 1377 (2014)........................................................16-17

*Shipp v. McMahon*, 199 F.3d 256 (5th Cir. 2000)..............................................10

*Swenson v. Swenson*, 420 S.W.2d 638 (Tex. Civ. App.—Houston [14th Dist.] 1967)....12

*Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005)...........10

*Toone v. Wells Fargo Bank*, 716 F.3d 516 (10th Cir. 2013)..................................19

**Statutes**

Fed. R. Civ. P. 8(a)(2).............................................................................10

Fed. R. Civ. P. 8(c)(1).............................................................................10

Fed. R. Civ. P. 12(b)(6)........................................................................10, 18

Fed. R. Civ. P. 12(d)...............................................................................18

Fed. R. Civ. P. 12(e)...............................................................................20

Tex. R. Civ. P. 202...................................................................................5

## IV.  STATEMENT OF FACTS

**A.    Plaintiff Seeks To Investigate Defamation Claims Against Defendant.**

1.      On February 14, 2013, Plaintiff Misko filed a petition for pre-suit discovery in Texas state court pursuant to Tex. R. Civ. P. 202, which permits parties to investigate claims prior to filing suit ("202 Petition").  *See generally* Ex. A to <u>Doc. 10</u>.  Misko sought the depositions of both Defendant Backes and Tracey Johns ("Johns") to "to investigate potential claims by [Misko] *for defamation and conspiracy to commit defamation* against Backes and Johns (and potentially others)."  *See id.* at ¶ 2 (emphasis added).  The basis for the allegations of defamation centered on Backes' statements regarding such matters as Misko's mental health, character, and the genetic testing status of *Misko's horses*.  *See id.* at ¶ 7 ("During January 2013, on multiple occasions, Backes posted comments on [an online horse forum] impugning [Misko's] integrity in her business and calling into question the genetic testing status of certain of [Misko's] valuable horses.").

2.      Nowhere in the 202 Petition is there any reference whatsoever to Backes' advertising of her quarter horses, the genetic testing of those horses, or issues related to the genetic disease HERDA in Backes' horses.  *See generally id.*  Backes statement in her Brief in Support of her Motion to Dismiss that the 202 Petition addressed issues of the genetic testing of Backes' horses is an outright fabrication.  *See* Doc. 9 at ¶1.

**B.    Backes Thwarts The Pre-Suit Discovery By Filing A Groundless Lawsuit.**

3.      Seeking to avoid the deposition on the allegations of defamation, Backes then filed suit in Collin County District Court on May 13, 2013 against Misko for allegedly contacting a genetic testing laboratory to illicitly obtain genetic testing results and

disclose them to third parties. *See generally* Ex. B to Doc. 10. Without any evidence to support this groundless claim, Backes would later nonsuit her entire action against Misko without prejudice ("Backes Nonsuited Claims"). *See* Ex. H to Doc. 10 (final judgment discussing Backes nonsuit without prejudice).

4.      Prior to Backes nonsuit, however, Misko would file a counterclaim on January 27, 2014 against Backes for the defamation that was the subject of the 202 Petition ("Misko's Counterclaim"). *See* Ex. C to Doc. 10. Misko's Counterclaim is based on a series of vicious personal attacks perpetrated by Backes and Johns, culminating in Johns accusing Misko of being responsible for Misko's daughter's frequently illnesses as a result of Munchausen–Syndrome–By–Proxy ("Munchausen"), a condition where a caregiver purposefully causes their child or loved one to become ill. *See id.* at ¶¶ 10-19.

5.      As Backes admits in her Brief in Support of the Motion to Dismiss (*see* Doc. 9 at ¶ 2), Misko's Counterclaim does not assert any claims related to Backes' advertising or genetic testing of Backes' horses. *See generally* Ex. C to Doc. 10. In fact, there is no reference made whatsoever in Misko's Counterclaim to Backes' advertising of her quarter horses, the genetic testing of those horses, or issues related to the genetic disease HERDA in Backes' horses. *See generally id.* Misko's sole claim against Backes was for conspiracy with Johns to make the "Munchausen" post against Misko. *See id.* at ¶¶ 20-22.

**C.      The Appellate Ruling On Misko's Counterclaim.**

6.      After Misko filed her Counterclaim, Backes then moved to dismiss the claim for conspiracy to commit defamation under the Texas Anti-SLAPP statute, the Texas Citizen's Participation Act ("TCPA"). *See Backes v. Misko,* 486 S.W.3d 7, 16 (Tex.

App.—Dallas 2015) (attached as Ex. D to <u>Doc. 10</u>).  The trial court denied the TCPA motion, and then Backes sought interlocutory appeal.  *See id.* 20-21.

7.    The Dallas appeals court held that the TCPA applied to Misko's Counterclaim for conspiracy to defame against Backes.  *See id.*  In so holding, the Dallas appeals court held that the statements Misko complained of in her Counterclaim—directly contrary to what Backes argues in her Motion to Dismiss in regards to *res judicata*—had nothing to do with the advertisement or sale of horses and thus the "commercial speech" exception to the TCPA did not apply:

> On its face, the [alleged defamatory statement] concerns a general inquiry into whether anyone is familiar with [Munchausen] and if so, asks for information about reporting a suspected individual.  *Nothing within the [alleged defamatory statement] involves the sale or lease of any goods or services related to the quarter horse industry or any other related business.*  Thus, the Post does not arise out of the sale or lease of goods or services.

*Id.* at 22-23 (emphasis added).

8.    In addressing whether Misko had produced evidence to support a *prima facie* case that Backes conspired with Johns to defame her with the Munchausen post, the appeals court outlined the elements for Misko's Counterclaim against Backes, which, under Texas law, required Misko to prove "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.".  *See id.* at 27.  Backes argued on appeal that Misko did not have evidence that there was a "meeting of the minds" between Johns and Backes.  *See id.* at 27.  The court of appeals held that Misko did not have the "clear and specific evidence" required by the TCPA that Johns and Backes had a meeting of the minds to defame Misko.  *See id.* at 27-29.

9.      The only reference the court of appeals makes to anything arguably related to this case likes in Misko's argument for a spoliation inference based on Backes' deletion of discussion board threads (she was the moderator of the discussion board at the relevant time) that pertained to, among other things, whether one of Backes' horses testing positive for HERDA.  *See id.* at 28-29.  Misko argued that Backes deletion of this thread should give rise to a spoliation inference, however, the appeals court disagreed because the deleted thread contained information—such as whether one of Backes' horses tested positive for HERDA—that was irrelevant to Misko's Counterclaim, which dealt with accusations of Munchausen and not issues of genetic testing.  *See id.* at 29.

**D.     Subsequent Proceedings In The Trial Court.**

10.     The court of appeals reversed and rendered on Misko's Counterclaim as against Backes for lack of evidence, but held Misko had sufficient evidence to proceed on her defamation claim against Johns.  *See id.*  After the case was remanded to the state trial court, and after Backes nonsuited her claim, Misko filed an amended pleading asserting her Lanham Act Claim based on Backes' pattern and practice of false advertising in relation to Backes' horses genetic testing and quality.  *See* Ex. E to Doc. 10.  At the time Misko filed the amended pleading containing the Lanham Act Claim in state court, the trial court's scheduling order allowed for amended pleadings.  *See* Exs. F and H to Doc. 10.  However, after Misko added the Lanham Act Claim, Backes objected because she had allegedly not consented to that scheduling order and asked that the scheduling order be vacated, which would have the effect of making the Lanham Act Claim filed outside the prior pleading deadline.  *See id.*

11.     Upon the state trial court's indication that it would sustain Backes' objections to the scheduling order, Misko then nonsuited the Lanham Act Claim without prejudice. *See* Ex. H. to <u>Doc. 10</u>.[1]  Subsequent to the nonsuit, the trial court signed an order vacating the scheduling order and striking Misko's amended pleading containing the Lanham Act Claim.  *See* Exs. F and H to <u>Doc. 10</u>.  The trial court then severed the Backes-Misko portion of the case (the Counterclaim and the Backes Nonsuited Claims) from the Johns-Misko portion of the case (the live defamation claims).  *See* Ex. G to <u>Doc. 10</u>.  The trial court then issued a final judgment on the Backes-Misko severed matter, which specifically stated that the Lanham Act Claim was not adjudicated on the merits and the Court's order striking the amended pleading containing the Lanham Act Claim was without prejudice to that claim.  *See* Ex. H to Doc. 10 at p. 2.

## V.  ARGUMENT AND AUTHORITIES

12.     The Court should deny the Motion to Dismiss for at least <u>three</u> reasons.  <u>First</u>, *res judicata* does not apply because the Lanham Act Claim was not adjudicated in prior litigation and the only issue actually litigated between Backes and Misko was whether Backes had co-conspired to defame Misko by accusing her of abusing her child through Munchausen.  Contrary to Backes claim that facts underlying the Lanham Act Claim were "litigated", the Dallas court of appeals—the only court to adjudicate any claim between Backes and Misko on the merits—expressly held that Misko's Counterclaim was not based on any advertising or commercial activities of Backes and that any discussion

---

[1] Under Texas law, a nonsuit takes effect immediately upon filing.  *See Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011).

[2] Collateral estoppel, even were it argued by Backes, would be equally unavailing.  Under Texas law, "[f]or the doctrine [of collateral estoppel] to apply, a party must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action, (2) those facts were essential to the judgment in the first case, and (3) the parties were cast as adversaries in the first action."  *J.M. Muniz, Inc. v. Mercantile Texas Credit Corp.*, 833 F.2d 541, 543 (5th Cir. 1987) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)).  As discussed above, the Lanham Act Claim issues were

of genetic testing was unrelated to Misko's Counterclaim. <u>Second</u>, Misko adequately pleaded all essential elements of her Lanham Act Claim. <u>Finally</u>, even if Misko did not adequately plead essential elements of her Lanham Act Claim, the Court should grant Misko leave to replead to address any deficiencies.

### A.  Legal Standard For 12(b)(6) Motion.

13.    Motions to dismiss are viewed with disfavor and are rarely granted.  *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000).  In deciding a motion to dismiss under Rule 12(b)(6), the district court accepts as true those well-pleaded factual allegations in the complaint.  *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995).  "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. Id. It must appear beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (alterations and citations omitted).

14.    Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court has held, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.  *Res Judicata* Does Not Apply.

15.    *Res Judicata* is an affirmative defense that must be pleaded.  *See* Fed. R. Civ. P. 8(c)(1).  As such, the Fifth Circuit has recognized that a 12(b)(6) motion is generally not the appropriate mechanism to dismiss a claim based on *res judicata* because it is in

the nature of an affirmative defense, and not a deficiency in the pleadings.  *See Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).  Regardless, of the mechanism, however, *res judicata* does not apply in this case.

16.     The law of the state court giving rise to the judgment that may or may not have preclusive effect applies to the *res judicata* analysis.  *See Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096–97 (5th Cir. 1995).   Therefore, Texas law applies to this analysis Backes urges here.

17.     Under Texas law, *res judicata* and collateral estoppel are similar, but legally distinct doctrines:

> Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments.  Within this general doctrine, there are two principal categories:  (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel).  Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit.  Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit.

*Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628-29 (Tex. 1992) (citations omitted).

18.     Here, Backes argues *res judicata* and not collateral estoppel.  See, e.g., Doc. 9 at 11 (seeking dismissal of Complaint "on the grounds of *res judicata* claims preclusion.").[2]

19.     *Res judicata* applies where there is "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and

---

[2] Collateral estoppel, even were it argued by Backes, would be equally unavailing.  Under Texas law, "[f]or the doctrine [of collateral estoppel] to apply, a party must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action, (2) those facts were essential to the judgment in the first case, and (3) the parties were cast as adversaries in the first action."  *J.M. Muniz, Inc. v. Mercantile Texas Credit Corp.*, 833 F.2d 541, 543 (5th Cir. 1987) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)).  As discussed above, the Lanham Act Claim issues were not litigated in the prior action and, in any event, were certainly not essential to a finding that Backes did not co-conspire to defame Misko by accusing her of child abuse.

(3) a second action based on the same claims that were raised […] in the first action." *Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).

20.     Misko concedes that there is final judgment between the parties on Misko's Counterclaim.  However, Backes' argument that a judgment on the merits finding that she did not co-conspire to defame Misko by accusing her of Munchausen creates *res judicata* as to claims that Backes falsely advertised the qualities and characteristics of her horses under Section 43(a) of the Lanham Act is nothing short of absurd.  As discussed in detail above, these two claims have *nothing* to do with one another and, therefore, the Lanham Act Claim here cannot be "the same claim" as the Counterclaim against Backes on which there is a final judgment on the merits.[3]

21.     At best, there was discussion between Misko and Backes around the time Misko was defamed regarding the genetic status of one of Backes horses.  *See* discussion *supra* at ¶¶ 6-9.  This may have been relevant to demonstrate animosity between the two ladies insofar as it may have demonstrated a motive of Backes to conspire to defame Misko.  *See id.*

22.     Far from demonstrating that Counterclaim and this action arise from a common nucleus of operative facts, the Dallas appeals court determined that the evidence of a discussion between Backes and Misko regarding genetic testing was not relevant to Misko's claim that she was defamed through a false accusation of having Munchausen.  *See id.*   In addition, the Dallas court of appeals determined that the speech on which

---

[3]  As discussed above, Misko attempted to bring the Lanham Act Claim in the state court proceeding, but this claim was nonsuited and dismissed without prejudice.  See Ex. H to <u>Doc. 10</u>.  Besides the plain language of the trial court's order specifying the final judgment was without prejudice to the Lanham Act Claim, under Texas law, a procedural ruling such a motion to strike a pleading cannot have any preclusive effect.  *See Swenson v. Swenson*, 420 S.W.2d 638, 640 (Tex. Civ. App.—Houston [14th Dist.] 1967) ("An order or judgment that is merely a ruling on a technical or procedural aspect of the case is not *res judicata*.").

Misko's claim was based *was not* commercial speech targeted toward the sale of goods or services.  *See id.*

23.     Here, Misko's Lanham Act Claim is—by statutory definition and requirement—complaining of commercial speech, i.e. advertisements.  *See generally* Doc. 1.  In addition, even if the banter that occurred on a discussion board between Misko and Backes regarding genetic testing of horses were essential to the judgment on the Counterclaim—which it clearly was not—Misko's Complaint does not concern any communication or discussion between Backes and Misko.  *See generally id.*  Rather, the Lanham Act Claim in the Complaint is based on Backes false *advertisements* in the *marketplace* – not blog discussions with Misko.  *See, e.g., id.* at ¶¶ 19-20.[4]

24.     In any event, Backes' argument that fleeting references in the prior action to the parties' discussion of "genetic testing" of horses means that the Lanham Act issues "were actually" litigated is simply not the law.  The test for whether a second action is barred by *res judicata* from a prior judgment depends on the gist, or essential facts, of those claims:

> A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of *the factual matters that make up the gist of the complaint*, without regard to the form of action.

*Barr,* 837 S.W.2d at 630 (emphasis added) (citations omitted).

25.     Here, an examination of the "gist" of Misko's Counterclaim in the prior action was that Backes co-conspired with a third party to defame Misko by accusing her of child abuse.  *See* discussion *supra* at ¶¶ 6-9.  The "gist" of this case is whether Backes engaged

---

[4]  The only reference in the Complaint to any online discussion thread relates to a discussion between Backes, the genetic testing laboratory that Backes falsely claimed she used to test her horses, and a third party who sought to purchase one of Backes' horses. *See* Doc. 1 at ¶¶ 11-13.  However, this is not the basis of Misko's claim, but rather, what alerted her to Backes' fraudulent advertising and thus her Lanham Act Claim.

in false advertising regarding the quality and characteristics of her horses in the marketplace. *See generally* Doc. 1. These two claims clearly do not arise from the same set of operative facts.[5] Defendant's Motion to Dismiss on the ground of *res judicata* must be denied.

### C. Plaintiff Has Adequately Pleaded Her Lanham Act Claim.

26.       Backes also makes several arguments in her Brief in Support of her Motion to Dismiss that Misko's Complaint has been adequately pleaded. Backes argues: (1) that Misko has failed to adequately plead she is in the "zone of interests" of the Lanham Act; (2) Misko fails to adequately identify a false advertisement or promotion of Backes; (3) Misko fails to plead causation for her damages; and (4) Misko fails to plead that she was in direct competition with Backes. *See* Doc. 9 at pp. 14-18.

27.       Backes' arguments for dismissal attempt to transform the basic notice-pleading requirement of Fed. R. Civ. P. 8 into strict, formulaic, code pleading requirements where one slip is fatal. This is simply not the law. As discussed below, Misko has adequately pleaded her Lanham Act Claim and Backes' Motion should be denied.

### 1. Misko's Detailed Complaint.

28.       In her Complaint, Misko makes the following factual allegations:

- Misko's extensive background, experience, and history in the business of selling quarter horses. Doc. 1 at ¶ 6.

---

[5] Backes also argues in her Brief in Support of the Motion to Dismiss that Misko's Lanham Act Claim was a "compulsory counterclaim" of Backes Nonsuited Claims. *See* Doc. 9 at pp. 13-14. This argument makes no sense, however, because Backes nonsuited her claims without prejudice. *See* Ex. H. to Doc. 10. Therefore, the compulsory counterclaim rule cannot apply since there was no final judgment on the merits of any claim brought by Backes against Misko. In any event, even if there had been a judgment on the merits of Backes Nonsuited Claims, there would not be *res judicata* for the same reasons as discussed above since the gist of those two claims are also completely different. *Compare* Ex. B to Doc. 10 with Doc. 1.

- That Misko and Backes were direct competitors in selling quarter horses during the relevant time.  *Id.* at ¶¶1, 7.

- Specific details of the false advertisements and promotions, including specific details on what was advertised, such as the substance of the advertisement, where Backes horses were allegedly tested, and the time frame during which the fraudulent advertising took place.  *Id.* at ¶ 7.

- The specific Internet sites where Backes made her false advertisements and allegations that these types of sites are how the overwhelming majority of quarter horse sales are made.  *Id.* at ¶¶ 8, 10.

- That advertising her horses as free of HERDA and having been tested for the same was of material importance to the marketplace and such alleged testing gave Backes a competitive advantage.  *Id.* at ¶¶ 8-9.

- How Backes' advertising was false and when and how Misko became aware of the falsity of Backes' advertising.  *Id.* at ¶¶ 11-13.

- That Misko and Backes advertised on the same internet pages as one another and Backes' false advertising gave Backes a competitive advantage over Misko, who did not falsely claim—like Backes—that her horses were tested and were free of HERDA.  *Id.* at ¶¶ 14-15.

- That Misko saw a decline in sales during the period Backes engaged in false advertising.  *Id.* at ¶ 16.

- That Backes' advertising and sales took place in interstate commerce.  *Id.* at ¶ 20.

29.     To make out a prima facie case of false advertising under Section 43(a), the plaintiff must establish five elements:  (1) A false or misleading statement of fact about a product; (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception was material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.  *See IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002).

30.     As detailed above, Misko has adequately pleaded all of these elements of her Lanham Act Claim.

**2.  Backes' 12(b)(6) Arguments Are Without Merit**.

31.     Backes makes several groundless arguments in support of her Motion to Dismiss.  Each will be addressed in turn.

**(a)     Backes' *Lexmark* argument is misplaced.**

32.     First, Backes argues that Misko has failed to plead she is in the "zone of interest" of the Lanham Act as discussed by the Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1388 (2014).  *See* Doc. 9 at pp. 14-15.  *Lexmark* deals with the question of a split amongst the federal circuits of *who* Congress authorized to bring an unfair competition claim under the Lanham Act *outside of direct competitors*, which all circuits agreed were statutorily authorized to seek reg. *See Lexmark*, 134 S.Ct. at 1385 (discussing split amongst circuits of what parties other than direct competitors can bring unfair competition claims under the Lanham Act).

33.     In *Lexmark*, this was an issue, because the plaintiff was not in direct competition with the defendant.  *See id.* at 1383-84 ("Lexmark manufactures and sells

laser printers.  It also sells toner cartridges for those printers […] Static Control is not itself a manufacturer or remanufacturer of toner cartridges.").  In this case, Misko is a direct competitor with Backes, as Misko has pleaded (*see* <u>Doc. 1</u> at ¶¶1, 7) and as Backes own admission demonstrates (*see* Ex. B to <u>Doc. 10</u> at ¶ 7 (Backes' state court petition alleging Misko is her competitor)).  Accordingly, *Lexmark* is not applicable to this case because there is no dispute under federal law as to whether a direct competitor may bring a Lanham Act unfair competition claim.[6]

#### (b)  <u>Misko sufficiently pleaded commercial advertising.</u>

34.    Backes   next   argues   that   Misko   failed   to   specifically   identify   the advertisements complained of as the basis of the Lanham Act Claim.  *See* Doc. 9 at pp. 15-16.

35.    Misko *repeatedly* states in her Complaint that Backes advertisements and promotional material—not Backes' general discussions on genetic testing on discussion boards—that represented Backes' horses were tested and free from HERDA for the purpose of selling her horses in the interstate marketplace.  *See generally* <u>Doc. 1</u>.  Misko is not required to plead the "detailed factual allegations" of the advertisements as Backes suggests.  *See Twombly*, 550 U.S. at 555.

36.    Backes also argues that Misko's claim is really based on Backes' online discussion comments and not any advertisements.  *See* Doc. 9 at pp. 15-16.  However, this is not what Misko has pleaded as the basis of her Lanham Act Claim.  As pleaded,

---

[6] Backes also argues regarding the "proximate cause" requirement of *Lexmark*.  *See* <u>Doc. 9</u> at p. 14.  However, the *Lexmark* Court engages in this analysis only because, like with "zone of interest" issue discussed above, to determine who—other than a direct competitor—can suffer consequential damages as a result of false advertising under the Lanham Act.  *See Lexmark*, 134 S.Ct. at 1391 ("For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties" who are consequently harmed as a result of the competitor's damages).

Misko's Complaint clearly pleads the commercial speech required of a Lanham Act Claim and Backes cannot substitute her own allegations as to what Misko's lawsuit is based on with her own as a basis for dismissal.[7]

37.      Finally, Backes argues that, based on excerpts from the "Pleasure Horse Forum".  *See* Doc. 9 at p. 16, n.8.  First, Backes' reliance on evidence outside the pleadings and public record is inappropriate and should not be considered on a 12(b)(6) motion.  *See* Fed. R. Civ. P. 12(d).  In any event, rather than proving that the Pleasure Horse Forum is not a forum for advertising, Backes' submission actually proves the opposite.  As stated in Backes' own submission, the Pleasure Horse Forum contains a "Sale Discussion" forum.  *See* Doc. 9 at p. 16, n.8.

38.      Accordingly, for all of these reasons, Backes' argument that Misko failed to specifically plead commercial advertisements as a basis for her claim must fail.

**(c)      Misko sufficiently pleaded causation.**

39.      Backes also argues that Misko failed to sufficiently plead causation of her damages as a result of Backes' false advertising.  *See* Doc. 9 at p. 17.

40.      Backes argument demands too much.  Misko has pleaded that:  (1) the parties were direct competitors; (2) that whether horses were tested for and free of HERDA was material to purchasers of the horses; (3) that Backes falsely advertised her horses were tested for and free from HERDA; (4) that Misko advertised on the same sites as Backes; (5) that purchasers chose Backes' horses over Misko's as a result of the false advertising;

---

[7] Backes again falsely claims that the Dallas court of appeals determined that Backes' online discussion was not "commercial speech" and, therefore, this issue has already been decided.  *See* Doc. 9 at p. 16.  Besides the fact that Misko's Lanham Act Claim is not based on this "online discussion", the Dallas court of appeals only decided whether the post that was the subject of Misko's Counterclaim—the allegation she had Munchausen—was commercial speech and not any other statements.  *See Backes,* 486 S.W.3d at 22 (attached as Ex. D to Doc. 10) (focusing the analysis of the commercial speech exception to the TCPA only on the post on which Misko's defamation claim was based).

and (6) that Misko's sales suffered during the time of the false advertising.  *See* bullet point discussion *supra* at ¶ 28.

41.    This is sufficient to give rise to an inference of causation between Backes' false advertising and Misko's lost profits.  What Backes demands of Misko here is not appropriate for a pleading, but perhaps for summary judgment through evidence after discovery has sufficiently progressed.  As such, Backes' Motion to Dismiss on this point should be denied.

**(d)        Misko sufficiently pleaded the parties were direct competitors.**

42.    Finally, Backes argues that Misko failed to plead the parties were direct competitors during the relevant time.  *See* Doc. 9 at pp. 17-18.

43.    Misko, does in fact allege that the parties were direct competitors during the relevant time period.  *See* Doc. 1 at ¶¶ 1, 7.  Moreover, Backes' own pleadings on her Nonsuited Claims admit that Backes was a competitor during the relevant time.  *see* Ex. B to Doc. 10 at ¶ 7.

44.    Accordingly, for this reason and all of the reasons discussed above, Backes' Motion to Dismiss should be denied.

**D.  In The Alternative, Misko Should Be Given Leave To Replead**.

45.    Should the Court determine that Misko's Complaint is in any way deficient, Misko requests leave to replead.  Leave to amend should ordinarily be granted unless amendment would be futile, which is not the case here.  *See Toone v. Wells Fargo Bank*, 716 F.3d 516, 524 (10th Cir. 2013).

**E.  Backes' Motion For More Definitive Statement Should Be Denied**.

46.    Alternatively, Backes moves for a more definitive statement.  *See* Doc. 9 at

pp. 18-19.  A motion for more definitive statement should only be granted if the pleading is so vague that a defendant cannot frame a responsive pleading.  *See* Fed. R. Civ. P. 12(e).

47.     Here, Backes speaks out of both side of her mouth.   On one hand, she argues—wrongly—that she is certain that the Lanham Act Claim is based on the same facts as in prior litigation when it suits her *res judicata* argument.   On the other, she claims not to be able to understand the claims in this lawsuit.   Backes' argument is disingenuous and Misko's Complaint is specific and detailed enough to allow Backes to answer.

48.     Backes' motion for more definitive statement should be denied.

## VI.  CONCLUSION

For all of the reasons discussed above, the Motion to Dismiss should be denied.


Dated:  March 27, 2017.

Respectfully submitted,

CAMARA & SIBLEY LLP


/s/ Joseph D. Sibley_____
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
4400 Post Oak Pkwy.
Suite 700
Houston, Texas  77027
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF
KAREN MISKO**

**CERTIFICATE OF SERVICE**

This is to certify that on this the 27th day of March, 2017, a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record via ECF.

/s/ Joe Sibley_____
Joe Sibley